487 So.2d 1040 (1986)
Amos Earl ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 65506.
Supreme Court of Florida.
April 10, 1986.
Rehearing Denied May 29, 1986.
James Marion Moorman, Public Defender and W.C. McLain, Asst. Public Defender, Chief, Capital Appeals, Tenth Judicial Circuit, Bartow, for appellant.
*1041 Jim Smith, Atty. Gen. and William E. Taylor, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Amos Robinson appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We affirm the conviction, but vacate the death sentence and remand for a new sentencing proceeding before a jury.
In October 1983 Robinson and Abron Scott accosted a man in the parking lot of a Tampa bar. After beating him unconscious, they placed the victim in the back seat of his car and drove to an isolated area in Pinellas County. After they pulled the victim out of the car, he and Scott started fighting. Robinson attempted to run over the victim with the car, but stopped in order to keep from hitting Scott too. Scott then beat and choked the victim and finally ran over him with the car, which became stuck in the sand while resting on the victim.
Two unknown men in pickup trucks helped Scott and Robinson pull the car out of the sand. Robinson and Scott then moved the body out of the road into a wooded area. They left in the victim's car and were arrested at the home of Robinson's mother in Jackson County two weeks later.
The state charged Robinson with first-degree murder, robbery, and kidnapping. The jury convicted him as charged,[1] and recommended the death penalty. The trial court agreed with that recommendation and sentenced Robinson to death.
In the first point challenging his conviction Robinson claims that the state failed to prove that the victim's death occurred through the criminal agency of another (an element needed to establish corpus delicti) independent of, and prior to introducing, Robinson's confession. Therefore, he argues that the court improperly admitted the confession into evidence. The record does not support this contention. Among other things, evidence and testimony other than Robinson's confession established that 1) the victim had left his home in good health; 2) he had apparently continued to enjoy that state of health at a bar where he purchased some drinks with cash; 3) his body was found in a remote area of Pinellas County, miles from where he was last seen, and his money and jewelry were gone; 4) laboratory examination of the victim's car revealed the presence of his type blood; 5) the police confiscated that car from persons who did not own it; and 6) Robinson had the victim's car in his possession after the victim's death. The state, therefore, introduced substantial evidence independent of the confession, and we find no merit to this point.
The police tape recorded Robinson's confession. At trial the state introduced the recording, an edited copy of the recording, and a transcript of the edited tape.[2] While listening to the edited tape, the jury had copies of the transcript. Defense counsel objected to introduction of the tape as cumulative of the detective's testimony regarding Robinson's confession. As an alternative, he also objected to both the tape and the transcript being introduced, claiming that the jury could have one or the other, but not both. The state and defense counsel both told the trial court that defense counsel had reviewed the transcript and that he had no problems with it. The court admitted both into evidence.
Robinson now claims that the court erred in allowing the transcript into evidence and into the jurors' possession because he had not read, signed, and adopted it and because the tape itself, not the transcript, was the best evidence. Robinson did not raise these grounds below so that the trial court could consider them. We *1042 therefore find these arguments barred. Steinhorst v. State, 412 So.2d 332 (Fla. 1982). The clerk delivered all exhibits, except the unedited tape and a video tape of the crime scene, to the jury to be used in its deliberations. Defense counsel did not object to the edited tape or the transcript being taken to the jury room. Thus, we find this issue has not been preserved.
Robinson also argues that the trial court erred in excusing two prospective jurors for cause because they did not make their opposition to the death penalty unmistakably clear under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Supreme Court recently clarified the Witherspoon test in Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), and held that a prospective juror could be excluded if that person's views on capital punishment would prevent or substantially impair the performance of a juror's duties. Unmistakable clarity is not required. Id. 105 S.Ct. at 852. Under questioning by the court and defense counsel, these two prospective jurors equivocated as to the effect of a possible death sentence on their performance as jurors. During voir dire, however, defense counsel asked the prospective jurors to place themselves figuratively on a football field with death penalty opponents and proponents in the opposite end zones. Each of the persons Robinson complains about now put herself and himself in the end zone "with the death penalty opponents." The trial court obviously had a reasonable doubt as to these people's possessing the state of mind necessary to rendering an impartial decision. See Hill v. State, 477 So.2d 553 (Fla. 1985). Our review of the record supports the trial court's excusing these people because we find that their views would have substantially impaired their performance. See Lara v. State, 464 So.2d 1173 (Fla. 1985).
After reviewing this case, we find no reversible error regarding Robinson's conviction of first-degree murder. Turning to the sentencing portion of his trial, however, we find that Robinson must receive a new sentencing proceeding.
In cross-examining several defense witnesses during the sentencing portion of this trial the state brought up two crimes that occurred after this murder and that Robinson had not even been charged with, let alone convicted of.[3] The state argued that these questions would undermine the credibility of these witnesses who testified that Robinson was a good-hearted person and a good worker. Defense counsel objected because Robinson had not been convicted of these purported crimes, but the court allowed the state's questions.
In arguing to the court and then in closing argument the state gave lip service to its inability to rely on these other crimes to prove the aggravating factor of previous conviction of violent felony. § 921.141(5)(b), Fla. Stat. (1983); Dougan v. State, 470 So.2d 697 (Fla. 1985). Arguing that giving such information to the jury by attacking a witness' credibility is permissible is a very fine distinction. A distinction we find to be meaningless because it improperly lets the state do by one method something which it cannot do by another. Hearing about other alleged crimes could damn a defendant in the jury's eyes and be excessively prejudicial. We find the state went too far in this instance.
We also find that the trial court erred in not instructing the jury as to more statutory mitigating circumstances. Defense counsel requested that the trial court read subsections 921.141(6)(d) (defendant was an accomplice, participation was relatively minor) and (f) (impaired capacity to appreciate criminality of conduct). The court refused, however, because he perceived a lack of competent, substantial evidence in the record to warrant charging the jury on those factors. We disagree.
Robinson's statements of what transpired could be interpreted by reasonable jurors to mean that he was merely an accomplice *1043 to Abron Scott and that his participation was relatively minor. According to these statements, Scott originally accosted the victim, committed the battery, and forcibly placed the victim into the car. Scott also drove the car to the site where the homicide occurred. Moreover, it was Scott who struggled with the victim and ultimately killed him with the car. The degree of Robinson's participation is subject to some debate, but there is at least enough evidence to warrant the giving of this mitigating charge to the jury.[4] Robinson also put on some evidence of impaired capacity. The trial judge may not have believed it, but others might have, and it, too, was adequate at least to instruct the jury on.
The jury must be allowed to consider any evidence presented in mitigation, and the statutory mitigating factors help guide the jury in its consideration of a defendant's character and conduct. We therefore find that the court erred in not instructing on these two statutory mitigating circumstances. Regarding mitigating evidence and instructions, we encourage trial courts to err on the side of caution and to permit the jury to receive such, rather than being too restrictive.
We affirm Robinson's conviction, but reverse his death sentence and remand for a new sentencing proceeding before a jury.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD and SHAW, JJ., concur.
ADKINS and EHRLICH, JJ., concur in the conviction, but dissent from the sentence.
NOTES
[1] Robinson does not challenge his convictions of and sentences for robbery and kidnapping. After reviewing this record, however, we find these convictions and sentences to be proper.
[2] Portions of the confession referring to a robbery which occurred the day after the instant homicide had been edited out.
[3] The state asked Robinson's family members and employer questions such as: "Are you aware ... the defendant went back to the jail and committed yet another rape?"
[4] We have difficulty in reconciling the findings of the extent of Robinson's testimony as found by the trial judge in his sentencing order with the record in this case.